UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**TRACY GENE KOKER**,

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,

    Defendant.

Case No. 6:14-cv-02043-KI

OPINION AND ORDER

Max Rae
P.O. Box 7790
Salem, OR 97303

  Attorney for Plaintiff

Billy Williams
United States Attorney
District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97201-2902

Courtney Garcia
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

Attorneys for Defendant

KING, Judge:

Plaintiff Tracy Koker brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying Koker's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner.

## BACKGROUND

Koker protectively filed an application for DIB on June 20, 2011, alleging disability beginning January 1, 2010. The application was denied initially and upon reconsideration. After a timely request for a hearing, Koker, represented by counsel, appeared before an Administrative Law Judge ("ALJ") on July 8, 2013.

On August 28, 2013, the ALJ issued a decision finding Koker had engaged in substantial gainful activity since January 1, 2010, that there was no continuous 12-month period during which Koker had not engaged in substantial gainful activity, and that therefore Koker was not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on December 12, 2014.

# DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ's opinion addressed only the first step of the five-step sequential evaluation. He found Koker had engaged in substantial gainful activity since the alleged onset date of January 1, 2010. As a result, he concluded Koker was not disabled within the meaning of the Act.

## FACTS

Koker worked at a dry cleaners. In 2010, he earned $19,267.26. In 2011, he earned $17,307.53. In 2012, he earned $14,123.00. In the first quarter of 2013, Koker earned $3,572.00. Koker worked about 36 hours a week, give or take, until February or March 2013.

When Koker did not show up to work for two days in February or March 2013, his employer laid him off. The business subsequently hired Koker back for 16 hours a week for minimum wage.

His employer, Lauralee Eckstrom, testified at the hearing about Koker's duties and limitations at the dry cleaners, completed a written Work Activity Questionnaire, and submitted a letter following the hearing.

## DISCUSSION

Koker challenges the ALJ's decision on two grounds. First, he urges error based on the ALJ's behavior at the hearing. Second, he questions the ALJ's conclusion that Koker's work at the dry cleaners constituted substantial gainful activity ("SGA").

Page 5 - OPINION AND ORDER

I.   The Hearing

Koker complains that his hearing did not comply with the expectation that such hearings be nonadversarial and informal. To the contrary, he characterizes the ALJ as "adversarial, arbitrary and aggressive, abusing his power to obstruct a fair development of the record." Pl.'s Br. 10. He contends the ALJ did not permit Koker's attorney to question Koker, Eckstrom, or Koker's friend, contrary to 20 C.F.R. § 404.950(e), 5 U.S.C. § 556(d), and SSR 13-1p. Koker suggests this was a violation of his due process rights. In addition, Koker asserts the ALJ had an obligation to fully develop the record, citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) and *Garcia v. Commissioner of Social Security*, 768 F.3d 925 (9th Cir. 2014).

The Commissioner contends the ALJ has discretion to determine when cross-examination is necessary, the record was not ambiguous, and Koker was permitted to submit additional evidence following the hearing.

The transcript of the hearing reflects the following colloquy:

ALJ: Mr. Rae [Koker's attorney], is there anything that you wish to ask Ms. Extrum [*sic*] that hasn't already been asked and answered?

ATTY: Has –

ALJ: No, Mr. Rae, I asked you a question.

ATTY: Yes, Your Honor, there are things I'd like to ask her.

ALJ: All Right. Well, give me some examples.

ATTY: Your Honor, I'd like to ask about the past work and the past employers. I'd like to understand better the limitations that he's under at this time.

ALJ: All right. Well, I'm not sure that that's really necessary.

ATTY: Are you ready to credit her testimony, Your Honor?

ALJ: No. In fact, I'm ready to rule and I am going to rule, okay? Ms. Extrum, would you step out, please because –

WTN: Uh-huh.

ALJ: – I don't want – in the event that Mr. Rae wants to try to get something else out of you, I don't want to taint what you might say. And thank you for coming in, I appreciate it.

. . . [Ruling]

ATTY: May I be heard?

ALJ: No, you may submit something in writing, if you wish.

ATTY: Are you going to –

ALJ: How many days would you like?

ATTY: Are you going to submit a written decision or is this your ruling?

ALJ: No, no, I'll submit a written decision, absolutely.

ATTY: Well, I haven't completed the testimony of my client or either of the two witnesses, Your Honor.

ALJ: Nothing is going to change. No new evidence is going to change my mind because I heard it from the employer herself, that she pays him less because he's worth less. She's not giving him charity. She gave me a description of all the various duties that he performs, okay?

    If you want to submit something in writing, an argument, I'll certainly entertain that and I'll give you five days for that.

Tr. 49- 52.

Pursuant to 5 U.S.C. § 556(d), "[a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." The ALJ has the "discretion to decide when cross-examination is warranted." *Solis v. Schweiker*, 719 F.2d 301, 301 (9th Cir. 1983).

Nevertheless, where the testimony is "crucial" to the ALJ's finding, denying an opportunity to cross-examine may constitute an abuse of discretion. *Id.*; *see also* 20 C.F.R. § 404.950(e) ("The administrative law judge may ask the witness any questions material to the issues and will allow the parties or their designated representatives to do so."); SSR 13-1p ("[I]f the record shows that the ALJ failed to conduct a full and fair hearing by refusing to allow the claimant to testify or cross-examine witnesses, we will find that an abuse of discretion has occurred.").

Here, it was Koker's burden to prove his work was not SGA. 20 C.F.R. § 404.1520(b); *Keyes v. Sullivan*, 894 F.2sd 1053, 1056 (9th Cir. 1990) (claimant must rebut presumption if he earns more than threshold amounts). His attorney requested the opportunity to cross-examine Eckstrom, and was prepared to ask her about Koker's limitations. For example, Eckstrom had mentioned in her testimony the need to schedule Koker to work with a helper, when his similarly situated colleagues were able to work alone. She also indicated that he gets distracted and requires redirection. Finally, in her written Work Activity Questionnaire, prepared before the hearing, which the ALJ did not ask her about, she reported Koker did not perform all the usual duties, did not complete his work in the same amount of time, and required special assistance such as irregular hours, fewer hours, and extra help/supervision. She placed his productivity at 50% as compared to other employees in similar positions and similar pay rates. The ALJ denied Koker the opportunity to ask about these relevant issues.

While the ALJ permitted Koker to submit additional argument (as opposed to evidence), he indicated he had already made up his mind. Thus, there is no assurance the ALJ considered Eckstrom's letter submitted the day after the hearing. In that letter, Eckstrom described her personal relationship with Koker, and her reason for continuing to employ someone with his

Page 8 - OPINION AND ORDER

productivity limitations. She reiterated that she gave Koker extra help, and that she staffed that extra help to ensure Koker did not work alone. Finally, she added she "could have hired someone else and got more for my money, but it was not just about money." Tr. 226.

In sum, since Eckstrom's testimony was "crucial" to the ALJ's decision about whether Koker's work rose to the level of SGA, the ALJ should have allowed Koker's attorney to question her. *Solis*, 719 F.2d at 301. His failure to allow full development of the record was error. To the extent Koker argues error with respect to being denied the opportunity to question Koker or Koker's friend, however, Koker has not indicated what evidence he would have elicited that would have been relevant to the SGA issue.

II.  Substantial Gainful Activity

It is Koker's burden to demonstrate he was not engaged in SGA. 20 C.F.R. § 404.1520(b). Work is SGA if (1) it involves significant physical or mental activity; and (2) it is done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572. Earnings made under or over threshold levels raise a presumption that the work either was or was not SGA. 20 C.F.R. § 404.1574(a)(1). Koker's earnings exceeded threshold levels as follows:

|      | Annual SGA Levels | Annual Earnings |
|------|-------------------|-----------------|
| 2010 | $12,000           | $19,267.26      |
| 2011 | $12,000           | $17,307.53      |
| 2012 | $12,120           | $14,123.00      |
| 2013 | $1,040/month      | $1,190/mo       |

Substantial Gainful Activity, https://www.socialsecurity.gov/oact/cola/sga.html (last visited Dec. 9, 2015); Tr. 133-36.

The ALJ took testimony from Koker's employer, Lauralee Eckstrom. Eckstrom testified she laid Koker off in 2013 because he missed two days of work without providing notice. Prior to laying him off, Koker distilled solvent, dry cleaned clothes, spotted stains, and washed shirts. She confirmed Koker worked 16 hours a week at the time of her testimony. She also testified Koker had been working at the dry cleaners since early 2001. Koker needed help when the store was busy and he became distracted. When the ALJ asked Eckstrom if Koker "hadn't been a good employee for the last 12 years," she replied, "I'm saying that he's been a special needs person in the last 12 years." Tr. 47. Eckstrom employed two other individuals to perform the same duties, but they did not need the assistance Koker required. She paid those employees more. When the ALJ asked why she paid Koker less, she explained "he can't do all the work." Tr. 49.

Eckstrom completed a Work Activity Questionnaire. In that form, Eckstrom noted Koker required irregular hours, fewer hours, and extra help. She thought he performed at 50% or less compared with other employees in similar positions and similar pay rates. She also reported she was not paying Koker more per hour than she would another employee in a similar position.

Eckstrom submitted a letter the day after her testimony, in which she added she would not have employed Koker were it not for their close relationship. His productivity level fell "too far below what needed to be done to fully earn the pay." Tr. 226. She just wanted to help him.

In his opinion, the ALJ found Eckstrom's letter to be inconsistent with her testimony in that she described Koker as more limited than she represented in her testimony. The ALJ concluded, based on the evidence presented to him, that Koker performed fewer duties than his colleagues, but also received less pay. He found nothing supported the notion that Koker's

services were inconsistent with his abilities, that Koker was paid more than his work was worth, or that the dry cleaners was a "sheltered" workshop.

Koker argues he did not actually earn the money Eckstrom paid him; he asserts that because of his low productivity, Eckstrom was subsidizing him. Eckstrom rated Koker's productivity at 50% of other employees in similar positions and with similar pay rates, and she provided the additional accommodation of ensuring other employees worked with Koker. In any event, he argues, if there is any "reasonable doubt" that the claimant did not engage in SGA, the ALJ should side with the claimant. SSR 83-33, 1983 WL 31255, at *9.

The ALJ should have considered evidence suggesting Eckstrom was subsidizing Koker. Earnings are considered subsidized if "the true value of your work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to you for your work." 20 C.F.R. § 404.1574(2). The ALJ did not allow Koker's attorney to question Eckstrom about this issue and did not reference the Work Activity Questionnaire Eckstrom completed. Most pertinent, the ALJ did not discuss Eckstrom's opinion that Koker's productivity was 50% or less that of other employees in similar positions and similar pay rates, which was consistent with the statement she made in her letter that Koker's productivity was very low. Since these facts are relevant to whether Koker was performing work at SGA levels–and whether his pay was aligned with his productivity–the ALJ was required to address them. As a result, the ALJ's decision is not supported by substantial evidence.

On remand, the ALJ should allow Koker or his attorney to question Eckstrom, should fully consider the Work Activity Questionnaire, and should address the considerations outlined in

SSR 83-33. If Koker's work does not qualify as SGA, the ALJ should proceed with the remaining steps in the sequential evaluation.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

DATED this   11th    day of December, 2015.


  /s/ Garr M. King
Garr M. King
United States District Judge